IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **AARON KOPP, et al.,** | CASE NO. 3:20 CV 2779 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **PRECISION BROADBAND INSTALLATIONS, INC.,** | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

### INTRODUCTION

The parties to this conditionally certified FLSA collective action are currently engaged in a discovery dispute. Defendant Precision Broadband Installations, Inc., seeks to request written discovery from all 100 opt-in plaintiffs to the action. Lead Plaintiff Aaron Kopp opposes and instead proposes written discovery from a smaller pool of randomly sampled class representatives. With leave of the Court, each party has submitted a memorandum regarding its position (Docs. 49, 50) and an opposition to its opponent's position (Docs. 51, 52). For the reasons considered below, the Court permits Defendant to conduct individual discovery of all opt-in plaintiffs subject to the restrictions set forth below.

### BACKGROUND

Lead Plaintiff Aaron Kopp is a cable installer for Defendant Precision Broadband Installations, Inc. ("Precision"). (Doc. 6, at 3). Defendant provides broadband installation and services in Ohio, Michigan, Pennsylvania, Illinois, Kentucky, and Florida. *Id.* Plaintiff has worked for Defendant in Toledo, Ohio, since 2016. *Id.*

Plaintiff claims Defendant violated his rights and those of other similarly situated employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. *Id.* at 1. Plaintiff alleges Defendant did not allow cable installers to report all their weekly work hours beyond 40 hours (their overtime hours). *Id.* at 3. Defendant thus failed to lawfully compensate these cable installers for the overtime hours they worked. *Id.* Plaintiff next alleges Defendant failed to lawfully compensate cable installers for any overtime hours they were permitted to report. *Id.* Finally, Plaintiff alleges Defendant unlawfully neglected to include appreciation bonuses and holiday bonuses in cable installers' regular rate of pay for purposes of calculating the correct overtime compensation rate, thus underpaying cable installers for any overtime compensation they did receive. *Id.* at 4. As a result of these failures, Plaintiff alleges Defendant failed to make, keep, and preserve accurate records and knowingly and willfully violated the FLSA. *Id.*

This Court conditionally certified Plaintiff's collective action and permitted Plaintiff to send a notice to potential opt-in plaintiffs. (Doc. 25). The Court-approved notice read as follows:

> Plaintiff alleges that Precision violated the FLSA by not paying their hourly, non-exempt cable installers overtime compensation at the rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 each workweek. Plaintiff alleges that this happened because he and all other cable installers were instructed by supervisors of Precision to not report all the hours he worked each week. In addition, Plaintiff alleges that he and all other cable installers were not paid additional overtime compensation on the bonuses they earned.

(Doc. 21-5, at 1). One hundred plaintiffs have opted into the collective action. (Doc. 49, at 2; Doc. 50, at 1). These plaintiffs have worked at eleven different Precision locations in six different states. (Doc. 49, at 2). Defendant now seeks to send written discovery requests to all opt-in plaintiffs. *Id.*, at 1. Defendant's current proposal contains eight interrogatories, six requests for production of documents, and three requests for admission. (Doc. 49-1). Plaintiff seeks to limit this written discovery to sixteen opt-in plaintiffs with ten alternates. (Doc. 50, at 2).

2

STANDARD OF REVIEW

The scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). But "th[e] desire to allow broad discovery is not without limits[,] and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford*, 925 F.2d 901, 906 (6th Cir. 1991). Nonprivileged, relevant material may still be excluded from discovery if the Court determines "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court also "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that" the discovery a party seeks is outside the scope of Rule 26(b)(1), could have been obtained by the party in another way, is "unreasonably cumulative or duplicative", or is otherwise overly burdensome. Fed. R. Civ. P. 26(b)(2)(C). "Although a [party] should not be denied access to information necessary to establish her claim [or defense], neither may a [party] be permitted to 'go fishing[,]' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288, 305 (6th Cir. 2007) (internal quotations omitted).

DISCUSSION

The Fair Labor Standards Act ("FLSA") establishes overtime compensation requirements for employers. 29 U.S.C. § 207(a). The FLSA authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated" to enforce these requirements. 29 U.S.C. § 216(b). There are two requirements for these collective actions: "1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (internal citations and quotations omitted).

Certification of FLSA collective action cases is typically bifurcated. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017).

> At the notice stage, conditional certification may be given along with judicial authorization to notify similarly situated employees of the action. Once discovery has concluded, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated.

*Id.* (citing *Comer*, 454 F.3d at 546). This collective action has been conditionally certified. The parties now dispute the proper scope of discovery: Defendant seeks written discovery from all 100 class members, and Plaintiff seeks to limit that discovery to 16 randomly chosen representatives. The Supreme Court and the Sixth Circuit have found representative sampling permissible, but not mandatory, as evidence to prove liability at trial in collective and class actions. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016); *Monroe*, 860 F.3d at 411. To determine the proper scope of discovery in the instant case, this Court considers the decisions of other district courts and concerns of individualization, efficiency, and statistical significance.

<u>Other Courts</u>

Plaintiff cites collective actions in Ohio in which representative discovery was permitted. These cases include those in which a class of 2,000 opt-in plaintiffs was reduced to 24 representatives for discovery (*Raisor v. Menard*, No. 3:18-CV-314 (N.D. Ohio 2019)), a class of 3,875 reduced to 94 *(Rosenbohm v. Cellco P'ship*, 2019 WL 2141901 (S.D. Ohio)), a class of 115 reduced to 31 *(Gentrup v. Renovo Servs., LLC*, 2010 WL 6766418 (S.D. Ohio)), a class of 1500 reduced to 90 (*Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354 (S.D. Ohio 2006)), and a class of 52 reduced to 34 (*Johnson v. Int'l Steel & Counterweights LLC*, 2021 WL 5359198 (N.D. Ohio)). Excepting *Johnson*, the classes in these cases were far larger than that in the instant case and presented amplified efficiency concerns.

4

Defendant cites cases from other federal courts which have permitted individual discovery to all plaintiffs. In one such case, a collective action of 136 opt-in plaintiffs was considered by the court to be "relatively small" and therefore appropriate for individual discovery targeted to each opt-in plaintiff. *Twohill v. First Acceptance Corp.*, 2018 WL 11437817, at *2 (M.D. Tenn.) ("While there is support for both positions, the most critical consideration appears to be the number of Opt-In Plaintiffs. Specifically, courts are more inclined to order a representative sampling as the number of Opt-In Plaintiff nears 200 or above."). The *Twohill* decision was made at the same procedural posture as the instant case— the determination of the scope of discovery after provisional class approval.

Courts have permitted individual discovery for opt-in plaintiff class sizes of 100 (*Lloyd v. JP Morgan Chase & Co.*, 2015 WL 1283681 (S.D.N.Y.)), 136 (*Renfro v. Spartan Computer Servs., Inc.*, 2008 WL 474253 (D. Kan.)), 127 (*Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185 (E.D. Va. 1991)), and 80 (*Page v. Grandview Mktg., Inc.*, 2010 WL 11629668 (D. Nev.)). The Court finds these examples of class sizes comparable to that in the instant case to be persuasive.

<u>Individualized Concerns</u>

Defendant asserts three practical reasons for individual discovery from all plaintiffs. First, Defendant argues it must determine which plaintiffs have opted into which claims. The notice sent by Plaintiff informed potential plaintiffs of claims that "Precision violated the FLSA by not paying their hourly, non-exempt cable installers overtime compensation at the rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 each workweek" and that "cable installers were not paid additional overtime compensation on the bonuses they earned." (Doc. 21-5, at 1). There are two claims in this notice. Additionally, in the Amended Complaint, Plaintiff splits the first claim in the notice into two distinct claims: first, that "Defendant did not

5

allow Plaintiff and other similarly-situated cable installers to report all of the hours they worked each day and each week," which led to Defendant's alleged failure to pay Plaintiff appropriate overtime compensation, and second, that "Defendant failed to pay Plaintiff and other similarly-situated cable installers overtime compensation for the overtime hours they were allowed to report each week." (Doc. 6, at 3). In order to defend, Defendant must be able to identify which claims apply to each plaintiff.

Second, Defendant argues individual discovery is necessary because "the Opt-In Plaintiffs work(ed) at 11 different locations and report(ed) to several different managers and supervisors". (Doc. 49, at 8). Defendant wishes to determine "who . . . allegedly instructed each Opt-In Plaintiff to underreport his or her hours and what . . . was allegedly said." *Id.* Plaintiff rightly points out that a variety of locations does not prevent representative discovery from being accurate and effective. *See Gentrup*, 2010 WL 6766418, at *4-8 (holding representative discovery was appropriate in a collective action of 115 plaintiffs spanning 20 different states). But in the instant case, in which there are several claims into which plaintiffs could opt, some of which include what specific supervisors may have told employees, the Court finds Defendants' proposed inquiry to be reasonable.

Third, Defendant argues representative discovery is not appropriate on the merits of the claims.

> Specifically, the underreporting of hours claim is not a product of a uniform company-wide policy that instructs employees to work overtime and not record it. In fact, as evidenced by PBI's Employee Handbook, the exact opposite is true. . . . In *Monroe*, there was a company-wide policy to underreport hours, while in this case PBI's policy is that all hours be reported.

(Doc. 49, at 7-8). Defendant argues this factor distinguishes the instant case from the FLSA collective actions cited by Plaintiff. (Doc. 52, at 8). This is blatant question-begging by the Defendant: the argument assumes the truth of the conclusion that Defendant did not have such an

6

unwritten policy or practice. This issue is precisely what Plaintiff's suit seeks to determine. Defendant cannot decide the merits of the claim by simply declaring it in a brief.

Efficiency

Plaintiff asserts that preparing discovery from 100 plaintiffs, even written discovery, requires significant time and labor. (Doc. 50, at 9). Plaintiff's estimated fee calculation is incorrect, as they assume all 100 plaintiffs will be deposed by Defendant. *Id.* Defendant currently seeks to conduct only written discovery. (Doc. 49, at 2). This Court cautions both parties, as the *Twohill* court did, that "the authorization of individualized written discovery does not extend to the number of depositions." *Twohill*, 2018 WL 11437817, at *2. The Court does not doubt Plaintiff will still incur substantial costs.

The FLSA's fee-shifting provisions allow that "unless Defendants prevail, Plaintiffs may be entitled to recover attorney's fees related to the additional time expended on responding to the individualized discovery." *Twohill*, 2018 WL 11437817, at *2. Regardless of the possibility of recouping fees, the Court is mindful of the time burden imposed by extensive discovery.

Statistical Significance

Plaintiff argues representative discovery of sixteen plaintiffs, or sixteen percent of the opt-in class, would be "statistically significant" and therefore sufficient for Defendant's purposes. (Doc. 50, at 3). Plaintiff cites *Monroe* for this proposition:

> Testifying technicians here are representative, and the ratio of testifying technicians to nontestifying technicians—5.7%—is well above the range commonly accepted by courts as sufficient evidence, especially where other documentary and testimonial evidence is presented. *See, e.g., Morgan*, 551 F.3d at 1277 (affirming award to 1,424 employees based on testimony from seven, or .49%, in addition to other evidence); *S. New Eng.*, 121 F.3d at 67 (affirming award to nearly 1,500 employees based on testimony from 39, or 2.5%); *Burger King Corp.*, 672 F.2d at 225 (affirming award of back wages to 246 employees based on testimony from six, or 2.4%).

7

*Id.* (quoting *Monroe*, 860 F.3d at 410-11).

Defendant rightly counters that Plaintiff misunderstands calculation of statistical significance. "This type of 'comparative percentage analysis' . . . does not specifically correlate to statistically significant findings." *Johnson*, 2021 WL 5359198, at *4. Statistical significance refers to the measurement of the probability of a result being reflective of one's hypothesis versus being reflective of random chance. Statistical significance depends on the acceptable margin of error as well as on the size of and amount of variation in the underlying population. The smaller the population and the greater the variation, the larger the sampling error becomes. *See* Amy Gallo, *A Refresher on Statistical Significance*, Harvard Business Review, Feb. 2016. Because the total class size in the instant case is smaller than in most cases cited by Plaintiff, which had thousands of class members, statistically significant representation would require a *larger* sample size, not a smaller one. *See Johnson*, 2021 WL 5359198, at *5 (determining 34 out of 53 plaintiffs would be an appropriate size for representative discovery, because "a larger percentage of the group is generally required for a sample to be statistically significant when the total class size is small").[1]

Limitations on Written Discovery

The Court finds that because the class of opt-in plaintiffs is relatively small, Defendant has legitimate concerns that require individual discovery, and a statistically significant sample of the class would have to be fairly large, Defendant will be permitted to serve written discovery upon all 100 opt-in plaintiffs.

---

1. The Court specifically notes the party seeking representative discovery of only six out of 54 class members and arguing such a small sample would be "statistically significant" in the *Johnson* case was represented by the same law firm asserting data from 16 out of 100 plaintiffs would be statistically significant in this case. Plaintiff's counsel should therefore already be aware their proposals do not accurately represent calculations of statistical significance.

The Court does, however, appreciate that doing so imposes significant burdens on counsel. The Court therefore modifies Defendant's proposed discovery requests as set forth in its Brief in Support of Individual Written Discovery to All Opt-In Plaintiffs (Doc. 49-1) so as to only include questions narrowly tailored to the claims. The Court strikes Requests for Production Nos. 1, 2, and 3, Interrogatories Nos. 2 and 3, and Requests for Admission Nos. 1, 2, and 3. The Court further modifies Interrogatories Nos. 4, 5, 6, 7, and 8 to read as follows:

> **Interrogatory No. 4:** If you did not record and report all the hours you worked on the timesheets that you submitted to PBI, please identify the reasons why you did not do so.
>
> **Interrogatory No. 5:** If you did not record and report all the hours you worked on the timesheets that you submitted to PBI, please identify every person to whom you reported the underreporting of hours worked.
>
> **Interrogatory No. 6**: If you did not record and report all the hours you worked on the timesheets that you submitted to PBI, please identify the occasions you underreported hours and the number of hours underreported.
>
> **Interrogatory No. 7:** If a person or persons at PBI instructed you to not report all your hours worked on the timesheets that you submitted to PBI, please identify those individuals.
>
> **Interrogatory No. 8:** Is the document attached hereto as Exhibit A a true and accurate copy of a handbook receipt signed by you in connection with your employment at PBI on the date indicated? If not, please explain why not.

The Court will therefore permit Defendant to request written discovery from all members of the opt-in class consisting of Interrogatory No. 1; Interrogatories Nos. 4, 5, 6, 7, and 8 as modified by the Court; and Requests for Production Nos. 4, 5, and 6. All other written discovery as proposed by Defendant is prohibited.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant is permitted to conduct limited written discovery of all opt-in plaintiffs as described herein.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE
