UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| AARON KOPP, on behalf of himself and all others similarly situated, | CASE NO.: 3:20-CV-2779 |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | |
| PRECISION BROADBAND INSTALLATIONS, INC., | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |
| Defendant. | |

**I.     INTRODUCTION**

Representative Plaintiff Aaron Kopp, on behalf of himself and all Opt-In Plaintiffs (collectively "Plaintiffs"), and Defendant Precision Broadband Installations, Inc. ("Defendant" or "PBI") respectfully move this Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve *bona fide* disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes. Plaintiff asserted that Defendant unlawfully failed to pay its hourly, non-exempt employees, including Plaintiff, for all time worked and overtime compensation for all of the hours they worked over 40 each workweek. Defendant denied all allegations that it violated either the FLSA or Ohio's wage-and-hour statutes.

If approved by the Court, the Settlement will provide for the issuance of the first installment of Individual Payments within fourteen (14) days of approval by this Court. The second installment will by made by Defendant within six (6) months of the first installment.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and with the assistance of Magistrate Judge Darrell A. Clay, and reached on October 31, 2023.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1:   Joint Stipulation of Settlement and Release

Exhibit 2:   Declaration of Chastity L. Christy

Exhibit 3:   Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Action

On December 16, 2020, Representative Plaintiff Aaron Kopp filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and alleged that Defendant unlawfully failed to pay its hourly, non-exempt cable installers, including Plaintiff, for all time worked and overtime compensation for all of the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03. (Doc. No. 1.)

On March 31, 2021, Plaintiff filed his Motion for Conditional Certification, Expediated Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs. (Doc. 21.) On April 30, 2021, Defendant filed its Opposition Brief (Doc. 23). On May 7, 2021, Plaintiff filed his Reply Brief. (Doc. 24.)

On June 30, 2021, this Honorable Court granted Plaintiff's Motion for Conditional Certification. (Doc. 25.)

Notice was sent to the 475 putative class members on August 4, 2021, and the Opt-In Period closed on September 18, 2021. (Ex. 2, Declaration of Chastity L. Christy, ¶ 18.) In addition to Representative Plaintiff Aaron Kopp, 95 Opt-In Plaintiffs remain in this action and are included in this Settlement. (*Id.*)

### B. Negotiation of The Settlement

Between January 2021 and July 2023, the Parties engaged in informal and formal comprehensive exchanges of information, including formal discovery, regarding Plaintiff's claims and Defendant's defenses to such claims. (Ex. 2, Christy Declaration, ¶ 23.) This included the production of time and pay data of Plaintiff and Opt-In Party Plaintiffs and the calculations of Plaintiff's and the Opt-In Party Plaintiffs' alleged overtime damages. (*ld.*) Moreover, relevant and extensive documents were exchanged, formal Answers and Responses to Interrogatories and Requests for Production of Documents were exchanged, and Plaintiff Aaron Kopp's deposition was taken. (*Id.*) Defendant served Interrogatories and Requests for Production of Documents upon all Plaintiffs in this action and 73 Plaintiffs provided formal written Answers and Responses. (*Id.*)

Between December 2020 and October 31, 2023, the Parties engaged in extensive legal discussion and correspondence. (*Id.* at ¶ 24.) Between March 31, 2022 and October 31, 2023, the Parties engaged in extensive settlement negotiations. (*Id.* at ¶ 25.) On April 14, 2022, the Parties

3

attended a settlement conference with District Judge James R. Knepp II, during which the Parties made progress toward resolution, but did not resolve the matter. (*Id.* at ¶ 26.) Following the mediation, the Parties continued to engage in formal discovery and litigation of this matter. (*Id.*) On July 20, 2023, the Parties attended a second settlement conference with Magistrate Judge Darrell A. Clay, during which the Parties made progress toward resolution, but did not resolve the matter. (*Id.* at ¶ 27.) Between July 20, 2023 and October 31, 2023, Magistrate Judge Clay continued engaging in settlement discussions between the Parties, and on October 31, 2023 the Parties reached an agreement to settle the Action on the terms set forth in the Settlement Agreement attached as Exhibit 1. (*Id.* at ¶ 28.) The Parties reached the proposed settlement in this matter after extensive research, legal debates, discussions, and correspondence, and after good faith bargaining. (*Id.*)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 95 Opt-In Party Plaintiffs ("Plaintiffs").

The Total Settlement Amount is Three Hundred Thousand Dollars ($300,000.00), which sum will cover: (a) all of the Individual Payments to Plaintiffs and (b) Plaintiffs' Counsel's attorneys' fees and expenses.

One Hundred Ninety-Five Thousand Six Hundred Twelve Dollars and Fifty-Two Cents ($195,612.52) will be allocated to Plaintiffs for payment of overtime compensation and liquidated damages and will be divided into Individual Payments to Plaintiffs. The Individual Payments were calculated proportionally on each Plaintiff's alleged overtime damages during the Released Period. The Individual Payments are provided in Appendix 1 of the Settlement.

In addition, one-third of the Total Settlement Amount, or $100,000.00, will be paid to Plaintiffs' Counsel for attorneys' fees and $4,387.48 for costs expended in the action, including the out-of-pocket costs associated with administering the Notice to the Class. (*Id*. at ¶¶ 42, 54.)

In exchange, the Action will be dismissed and the Plaintiffs will release Defendant from all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses pursuant to the Fair Labor Standards Act ("FLSA") and corresponding state wage and hour statutes as alleged in the Complaint for the Released Period.

### III.  THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Chastity L. Christy, and as explained below, Court approval is warranted on all scores.

#### A.  The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

5

The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Christy Declaration (*see* Exhibit 2), the standard supports approval of the Settlement.

### 1) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating claims under the FLSA, 29 U.S.C. §§ 201-219, including claims for unpaid hours worked and overtime compensation. The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the continued and extensive assistance of a qualified and well-respected Magistrate Judge. As such, there is no indicia of fraud or collusion.

### 2) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex wage and hour cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA. (Ex. 2, ¶ 31.) Defendant claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. (*Id*.) In addition, the

Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA. (*Id*.) Finally, the Parties disagreed about the number of hours Plaintiffs were permitted or not permitted to report per week. (*Id.* at ¶ 32.)

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. (*Id.* at ¶ 44.) The Parties would be required to engage in extensive briefing regarding collective class decertification, Rule 23 Class Certification, and summary judgment. (*Id*.) Continued discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties and the potential for over 475 Class Members in the litigation if it was certified as Rule 23 Class Action. (*Id.*) The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and Opt-In Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (*Id.* at ¶ 45.)

**3)     Investigation Was Sufficient to Allow the Parties to Act Intelligently**

The Parties engaged in substantial investigation and discovery prior to negotiating the Settlement Agreement. (*Id.* at ¶ 20.) Relevant information was exchanged, including a complete analysis of each Opt-In Plaintiff's alleged overtime damages with respect to the claims alleged in the lawsuit. (*Id.* at ¶¶ 21, 23.) Counsel obtained and reviewed detailed time and payroll records, as well as GPS travel records, for Plaintiff and Opt-In Plaintiffs, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.* at ¶ 23.) The Parties engaged in formal discovery, including written Interrogatories and Requests for Production of Documents. (*Id.*) The Parties exchanged significant documentation and Defendant took the deposition of Representative Plaintiff Aaron Kopp. (*Id.*)  In addition, Plaintiff's Counsel obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the proposed settlement class, and the legal issues in the case were thoroughly researched by counsel for the

7

Parties. (*Id.*.) All aspects of the dispute are well-understood, and were vehemently argued, by both sides. (*Id.* at ¶ 24.)

### 4) The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law and Plaintiffs' success at trial is not guaranteed. In sum, although Plaintiffs assert that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. (Ex, 2, ¶ 47.) Even if Plaintiffs were to succeed on the merits, there is the possibility that this Court or a jury would find that Plaintiffs' damages should be calculated at less than the 56 hours per week used to settle this matter. (*Id*.) This Court or a jury could also find that Defendant did not act willfully, and thus a two (2) year statute of limitations would apply. (*Id.*) Finally, a jury could find that Defendant acted in good faith, and thus no liquidated damages would not be awarded. (*Id.*) All of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id.*)

       **5)**       **Counsel and Class Representative Favor The Settlement**

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiffs' Counsel believes the settlement is fair, reasonable, and adequate. (*See* Exhibit 2.) Plaintiffs' Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their clients in negotiating the settlement. (*Id.*) Representative Plaintiff has been fully informed and involved in the settlement process, including participating in the mediations and settlement discussions, and agrees to the Settlement. (*Id.* at ¶ 36.) *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

       **6)**       **The Reaction of Absent Class Members**

The absence of class member objection indicates that the class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). Unlike a Rule 23 Class Action settlement, each Opt-In Plaintiff has chosen to Opt-In to this Action already and to designate Representative Plaintiff Aaron Kopp and Plaintiffs' Counsel as their representatives for purposes of any settlement at the time they signed and submitted their respective consent forms. Other members of the class who did not opt into this Action are not included in the settlement or bound by it.

       **7)**       **Settlement is in the Public Interest**

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The settlement ends complex litigation that has

been pending for approximately two (2) years and 11 months and provides substantial relief to Opt-In Plaintiffs and avoids protracted, costly litigation. *See Brotherton*, 141 F. Supp. 2d at 905-06. The terms of the settlement are equitable and provide a reasonable resolution of the action. As detailed below, each Plaintiff will receive approximately 100% of their unpaid overtime compensation damages for approximately a three year and 10 month calculation period (3-year statute of limitations period) for 56 hours of work per week, *after* the deduction of attorneys' fees and costs. (Ex. 2 at ¶ 40.) Continued litigation would serve to increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the Opt-In Plaintiffs. (*Id.* at ¶ 48.) In fact, rulings by this Court or a verdict by a jury could result in less of a recovery for Opt-In Plaintiffs if this Court or a jury were to rule in favor of Defendant on certain disputed issues of fact and law. (*Id.* at ¶ 47.)

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and Opt-In Plaintiffs.

All Individual Payments have been calculated proportionally on each Plaintiff's alleged overtime damages during the Calculation Period. The Calculation Period for Plaintiffs shall mean the period between December 17, 2017 and October 24, 2021, which is three (3) years and 10 months. (*Id*. at ¶ 39.) In calculating the damages, weeks in which any Plaintiff reported less than 40 hours per week or more than 56 hours per week were excluded. (*Id*.) Plaintiffs were credited

for working 56 hours per week in all weeks in which they reported at least 40 hours per week, but less than 56 hours per week. (*Id*.)

During the Calculation Period, Plaintiffs were allegedly denied $31,006.76 in overtime compensation and minimum wages for 45 hours of work per week; $90,772.49 in overtime compensation and minimum wages for 50 hours of work per week; $178,296.87 in overtime compensation and minimum wages for 55 hours of work per week; $195,996.38 in overtime compensation and minimum wages for 56 hours of work per week; $216,144.55 in overtime compensation and minimum wages for 57 hours of work per week; or $282,126.24 in overtime compensation and minimum wages for 60 hours of work per week, pursuant to Plaintiffs' Counsel's calculations. (*Id*. at ¶ 38.) If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation. Pursuant to the Settlement, each Plaintiff will receive almost 100% of their overtime compensation and minimum wages for approximately 56 hours of work per week, *after* the deduction of attorneys' fees and costs. (*Id*. at ¶ 40.)

Given that the amount of unreported time in question, whether liquidated damages would be awarded, and whether a 2-year or 3-year statute of limitations would apply all involve factual disputes that would need to be determined by a jury at a trial, the Parties reached agreement by resolving *bona fide* disputes. Accordingly, the settlement proceeds are fair, reasonable and adequate.

### C. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Opt-In Plaintiffs. In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The allocation to Plaintiffs represents 100% of their overtime compensation and minimum wages for approximately 56 hours of work per week for a three (3) year and 10 month calculation period, ***after*** deduction of attorneys' fees and litigation reimbursements to Counsel.

In Ohio, the preferred method is to award a reasonable percentage of the fund. See *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017)

12

(quotations and citation omitted). In *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014), the Court found that "the percentage approach is the most appropriate method for determining reasonable attorneys' fees" and awarded 33%, or $1,320,000, of the $4,000,000 settlement fund to class counsel. In doing so, this Court found:

> Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07–cv–430, 2011 WL 2532922, at *4 (S.D.Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

*Id*. at *6.

In *Dillow v. Home Care Network, Inc*., No. 1:16-CV-612, 2018 WL 4776977, at *4 (S.D. Ohio Oct. 3, 2018), the Court found, against the defendant's objection, that the percentage of the fund approach is the most appropriate and that the plaintiff's fee request was "reasonable and well within the ranges of fees typically approved by courts in the Sixth Circuit." *Id.* at *5 (citing *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund")).

Here, Plaintiff requests that the Court use the percentage method and award one-third of the settlement fund in attorneys' fees, particularly in light of the fact that Plaintiffs are receiving a very high recovery of their overtime damages and liquidated damages, after deduction of the one-third attorneys' fees and costs.

"In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018

13

WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.")[1] The Ohio practice is in accord with the practice throughout the Sixth Circuit and nationwide.

Moreover, Courts consistently approve a one-third fee request and Plaintiffs' Counsel's one-third fee request has been approved in similar collective and class actions in Federal Courts, including this Court. (*See* Ex. 2, ¶ 43, listing various cases in which courts have approved Plaintiffs' Counsel one-third fee award in similar matters.)

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. (*Id*. at ¶ 46.) At every step of the litigation, Defendant could have succeeded. (*Id.*) Therefore, Plaintiffs were at great risk for non-payment or a payment less than they would receive in this matter if the settlement is approved. (*Id.* at ¶ 49.) This risk of non-payment or a reduced payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorneys' fee request. (*Id.*)

---

[1]  *See also Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.,* No. 1:16-CV-448, 2017 WL 5247538, at *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund).

Plaintiffs' Counsel's Declaration contain information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibit 2.) Plaintiffs' Counsel has worked diligently in representing Plaintiff and Opt-In Plaintiffs over the past two (2) years and 11 months. Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (Ex. 2, ¶ 20.) This included interviewing and obtaining declarations from putative class members. (*Id*.) Because Defendant would not stipulate to conditional certification, Plaintiffs' Counsel was forced to brief the issue. (*Id*. at ¶ 16.) Further, Plaintiffs' Counsel administered the Notice to Class internally, rather than utilizing a settlement administrator. (*Id*. at ¶ 18.) The Parties engaged in discovery disputes, which required briefing and resolution by the Court. (*Id*. at ¶ 23.) Moreover, Plaintiffs' Counsel assisted Plaintiff and 73 of the Opt-In Plaintiffs in responding to Defendant's separately propounded Interrogatories and Requests for Production of Documents. (*Id*.) Plaintiffs' Counsel reviewed and analyzed voluminous documentation received from Defendant, including, but not limited to, time and pay records of Plaintiff and Opt-In Plaintiffs and daily GPS logs of the trucks utilized by Plaintiff and Opt-In Plaintiffs in performing their job duties during their daily routes. (*Id*.) Further, Plaintiffs' Counsel prepared voluminous and extensive Excel spreadsheets detailing the weekly calculation of damages for Plaintiff and Opt-In Plaintiffs. (*Id*.) Finally, Plaintiffs' Counsel attended two (2) separate settlement conferences and engaged in numerous email correspondence and telephone conferences with Magistrate Judge Clay in attempting to settlement this matter. (*Id*. at ¶¶ 27-29.) Plaintiffs' Counsel heavily litigated, and attempted to resolve, this matter for nearly three (3) years. The Docket speaks for how contentious this matter has been litigated.

The litigation expenses sought to be reimbursed are also proper and reasonable. Expenses incurred to date are $4,387.48, which includes administration of the notice to putative class

members. (*Id.* at ¶ 55.) All expenses were incurred during the course of the litigation of this Action. (*Id.*)

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

### IV. <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 3.

Respectfully submitted,

| | |
|---|---|
| /s/ Chastity L. Christy | /s/ Jeffrey N. Lindemann |
| Chastity L. Christy (0076977) | Jeffrey N. Lindemann |
| Anthony J. Lazzaro (0077962) | Tessa L. Castner |
| Lori M. Griffin (0085241) | Frost Brown Todd LLC |
| The Lazzaro Law Firm, LLC | Great American Tower |
| The Heritage Building, Suit 250 | 301 East 4th Street, Suite 3300 |
| 34555 Chagrin Boulevard | Cincinnati, Ohio 45202 |
| Moreland Hills, Ohio 44022 | Phone: 513-651-6800 |
| Phone: 216-696-5000 | Facsimile: 513-651-6981 |
| Facsimile: 216-696-7005 | tcastner@fbtlaw.com |
| chastity@lazzarolawfirm.com | jlindemann@fbtlaw.com |
| anthony@lazzarolawfirm.com | |
| lori@lazzarolawfirm.com | *Attorneys for Defendant* |
| *Attorneys for Plaintiffs* | |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 4, 2023, a copy of the foregoing was sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

                                        /s/ Chastity L. Christy
                                        One of the Attorneys for